UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA LEE DUFEK,** | **2:24-CV-13304-TGB-EAS** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | **ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS** |
| **KIM CARGOR,** | |
| Respondent. | |

Joshua Lee Dufek is a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan. Dufek has filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through attorney Maya Menlo of the State Appellate Defender Office. Dufek was convicted in Wayne County Circuit Court by a jury of two counts of first-degree criminal sexual conduct (victim less than 13 years old and defendant 17 years or older), in violation of M.C.L. § 750.520b(2)(B). He is currently serving a sentence of twenty-five to thirty years in prison and now challenges his conviction on the ground that he was denied effective assistance of counsel. The Court has carefully considered Dufek's arguments, but for the reasons that follow, his Petition for a writ of habeas corpus will be **DENIED**.

1

## I. BACKGROUND

Below are the relevant facts regarding Dufek's conviction from the initial Michigan Court of Appeals' opinion affirming his conviction. The facts are quoted directly because they are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This matter arises from allegations of sexual abuse against [Dufek] made by his daughter, AD,[1] when she was seven years old and resided with [Dufek] and his then wife, Sara Mullins, for several months. AD said that when she was afraid of the dark, [Dufek] came into her room to help her fall asleep. After rubbing her back, [Dufek] penetrated AD's vagina with either his fingers or his penis. This occurred several times. AD disclosed these allegations to her mother, Trisha Sweet, three years later after learning what sex was. [Dufek] denied sexually assaulting AD. [Dufek] was charged with two counts of first-degree CSC, penetration with penis, in Counts I and II, and two counts of first-degree CSC, digital penetration, in Counts III and IV. [Dufek] was convicted of Counts III and IV by the jury, and Counts I and II were dismissed as the result of a hung jury.

*People v. Dufek ("Dufek I"),* No. 349918, 2021 WL 2390200, at *1 (Mich. Ct. App. June 10, 2021).

The Michigan Supreme Court affirmed in part the Michigan Court of Appeals' decision, but remanded the case to the Michigan Court of Appeals to apply the correct standard for determining whether Dufek had

---

[1] Because the victim was a minor at the time of the offense, the Court will refer to her by her initials only, as the Michigan Court of Appeals did to preserve her privacy. *See* Fed. R. Civ. P. 5.2(a).

been prejudiced by his counsel's ineffectiveness. *People v. Dufek*, 969 N.W.2d 27 (Mich. 2022).

On remand, the Michigan Court of Appeals concluded that Dufek had not been prejudiced by his counsel's deficiencies and again affirmed his conviction. *People v. Dufek ("Dufek II")*, No. 349918, 2022 WL 981088 (Mich. Ct. App. Mar. 31, 2022).

On appeal, the Michigan Supreme Court again remanded the case to the Michigan Court of Appeals to reconsider whether Dufek was prejudiced by trial counsel's deficiency in asking Dufek's ex-wife whether she was aware of other child molestation allegations against Dufek, which opened the door to her testifying that Dufek's sister told her that she had been molested by Dufek when she was a child. While acknowledging that the Michigan Court of Appeals had addressed the prejudice issue in their opinion on remand, the Court found:

> [T]he panel made a critical error. It concluded that because the victim's testimony was "sufficient to convict defendant," he was not prejudiced by the admission of other-acts evidence. *People v Dufek* (*On Remand*), unpublished per curiam opinion of the Court of Appeals, issued March 31, 2022 (Docket No. 349918), p. 3, 2022 WL 981088. Sufficient evidence to convict does not obviate the need to make a prejudice determination. Rather, as the Court noted in *Strickland*, a prejudice analysis requires determining how the error affected other evidence properly presented.
>
> On remand, the Court of Appeals shall resolve the defendant's claims of ineffective assistance of counsel under the correct standard, evaluating the interaction of the improper other-

3

acts evidence with the other evidence presented at trial. Additionally, since this issue logically connects to the defendant's claim of cumulative error, that claim should also be addressed on remand, if necessary.

*People v. Dufek*, 980 N.W.2d 62, 63 (Mich. 2022).

On remand, the Michigan Court of Appeals concluded, based on the totality of the other properly admitted evidence, that Dufek had not been prejudiced by his counsel's deficiency in opening the door to the admission of evidence that Dufek had sexually abused his sister when she was a child. The court determined that AD's detailed testimony alone, some of which was corroborated by Dufek, provided sufficient evidence to support a conviction, and that Sweet's testimony that Dufek had molested his sister when she was a child was short and vague and never raised by either party again during the trial. The court further found that the cumulative effect of the other errors did not change its opinion. *People v. Dufek ("Dufek III")*, No. 349918, 2023 WL 115071 (Mich. Ct. App. Jan. 5, 2023) (per curiam), *lv. den.*, 994 N.W.2d 517 (Mich. 2023).

Dufek, through counsel, has now filed this Petition for a writ of habeas corpus, arguing he was denied the effective assistance of trial counsel.

## II. STANDARD OF REVIEW

Section 2254(d) of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

5

court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. ANALYSIS

### A. Ineffective assistance of counsel claims

A defendant must satisfy a two-prong test to show that he was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance and that the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* at 687. A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v.*

6

*Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123. Accordingly, pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Finally, this Court is aware that "reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over six years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 562 U.S. at 107 (citation omitted).

## B. Cross-examination of Sweet

In his first claim of error, Dufek argues that his trial counsel was ineffective in her cross-examination of Trisha Sweet, the victim's mother, by asking questions that opened the door for admission of evidence that Dufek had sexually abused his sister when she was a child. ECF No. 2, PageID.49–53.

The Michigan Court of Appeals recited the factual basis behind this claim in its first decision, while addressing a separate claim (not raised in this Petition) that the trial judge erred in admitting prior bad acts evidence:

> … Sweet was called as the prosecution's second witness on the second day of trial. During cross-examination by defense counsel, the following exchange occurred:

> > [*Defense Counsel*]: Did you ever hear from any other third parties, other than your daughter, which—whom you allege said so, did you ever hear from any other third parties that my client molested any girls, including your daughter?

> > [*Sweet*]: Yes.

> > [*Defense Counsel*]: Who told you that?

> > [*Prosecutor*]: Judge, now we're getting into—

> > The Court: (Interposing) Yeah, well, she asked the question, so there you go.

> > [*Prosecutor*]: Okay.

8

The Court: So, go ahead, answer the question.

[*Sweet*]: I didn't hear what she said.

[*Defense Counsel*]: I asked if you've ever heard any third parties claim that my client molested [AD]?

[*Sweet*]: That's not what you asked.

[*Defense Counsel*]: I thought you said you didn't hear my question. Now you heard it, and it's not what I asked?

[*Sweet*]: (No response)

[*Defense Counsel*]: Can you please tell the truth and answer my question?

[*Sweet*]: Yes. You asked me had I heard any other third party person claim that your client molested any other girl?

[*Defense Counsel*]: Have you ever heard—I will withdraw that question and rephrase it.

The Court: No, no. You—you'll have to take an answer, now. You asked it, and she understands what the question is, now.

Answer it.

[*Defense Counsel*]: So, now, she heard it.

[*Sweet*]: Yes; yes, I have.

The Court: Okay.

[*Defense Counsel*]: And have you ever made any reports to the police, or complaints?

9

[*Sweet*]: No.

During redirect examination, the prosecutor asked the court whether she could ask Sweet about this testimony, and the court allowed it.

[*Prosecutor*]: Your Honor, will the Court allow me to ask questions based on the—

The Court: (Interposing) Any door that was opened on cross, yes.

[*Prosecutor*]: All right.

[*Prosecutor*]: Ms. Sweet, when did you hear about the defendant molesting another girl?

[*Sweet*]: It was, I wanna' say, Sept—I believe it was September, of 2018. I'm not positive on the date.

[*Prosecutor*]: Okay. So, was that after [AD] had told you that she had been molested by the defendant?

[*Sweet*]: Yes.

[*Prosecutor*]: And who did you hear that from?

[*Sweet*]: [Defendant's] sister, Haley.

[*Prosecutor*]: Okay. And was that when [defendant's] sister was a child, or was—was she an adult?

[*Sweet*]: She was a child.

The Court: Well, I don't—is that who she heard it from, or is that who the complainant or the victim was?

[*Prosecutor*]: I'll ask the same question.

10

[*Prosecutor*]: Did you hear it from Haley Dufek, or was the victim Haley Dufek?

[*Sweet*]: Both.

[*Prosecutor*]: Okay. And was Haley Dufek a child when the sexual assault happened?

[*Sweet*]: Yes.

Outside the presence of the jury, the prosecutor again discussed the topic.

[*Prosecutor*]: .... As the Court is aware, with the last witness, Tricia Sweet, the defense asked a question about other sexual acts of the defendant. And I just wanted to let the Court know, and defense counsel know, that I do not plan on using that in closing. I'm not sure that it ever should have really been brought out, and I don't intend on using it any further, or mentioning it, at all.

The Court: So, in other words, that doesn't need to be explored any further, Ms. Schlussel [defense counsel]. I think probably the less said about that, the better, at this point.

[*Defense Counsel*]: While I agree, your Honor, I think I do have to clear the air on it and let my client respond to it.

The Court: Let your client respond to it?

[*Defense Counsel*]: Yes.

The Court: You know, I don't know why you asked the question that you asked because it opened a door that would never otherwise be opened. And by having your client talk about it, at all, is just like throwing the door open, again, and I'm not sure you really want to do that.

11

[*Defense Counsel*]: Okay. Thank you, your Honor.

*Dufek I*, 2021 WL 2390200, at *2–3.

The Michigan Court of Appeals in its initial opinion acknowledged that trial counsel committed an error in asking Sweet this question, but found that Dufek was not prejudiced. *Dufek I,* 2021 WL 2390200, at *16–17. In its subsequent opinions, the Michigan Court of Appeals again appeared to acknowledge that counsel was deficient in her cross-examination of Sweet, but that Dufek was not prejudiced by the questions. *See Dufek II*, 2022 WL 981088, at *2; *Dufek III*, 2023 WL 115071, at *2. In fact, in its final opinion, the Michigan Court of Appeals acknowledged that its prior "conclusion that defense counsel's questioning of Sweet on this point fell below an objective standard of reasonableness has been undisturbed" before proceeding to the prejudice issue. *Dufek III*, 2023 WL 115071, at *2.

The Sixth Circuit previously held that a federal habeas court should give no deference to a state court's "pro-petitioner" resolution of an issue. *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007). However, recently, the Sixth Circuit concluded that the holding in *Daniels* had been misread because that case involved a state court considering a habeas petitioner's constitutional challenge hypothetically, but that court did not decide the constitutional issue on the merits, nor did it make any evidentiary rulings that were decisive in the case. *Chandler v. Brown*,

137 F.4th 525, 544 (6th Cir. 2025) (citing *Daniels*, 501 F.3d at 739–40). By contrast, where the state court has made a ruling on the merits, a federal habeas court can and should accept that state court's finding even if it is favorable to the petitioner. *Id.* at 545 (accepting the state court's holdings that the trial court repeatedly abused its discretion by violating the state's evidentiary and procedural rules). Thus, it appears that this Court should accept the Michigan Court of Appeals' merits determination that defense counsel was deficient for asking questions to Ms. Sweet which opened the door to testimony from Ms. Sweet that Dufek's sister had alleged that Dufek molested her when she was a child.

In any event, a reviewing court "need not determine whether counsel's performance was deficient ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ...." *Strickland*, 466 U.S. at 697. Thus, if an alleged error by counsel was not prejudicial, a federal court need not determine whether counsel's performance was constitutionally deficient. *See McMeans v. Brigano*, 228 F.3d 674, 686 (6th Cir. 2000) (citing to *Strickland*, 466 U.S. at 697). This Court may therefore proceed directly to discussing the prejudice prong with respect to Dufek's first claim.

The Michigan Court of Appeals, in their final opinion, concluded at great length that Dufek had not been prejudiced by defense counsel's deficiency in opening the door to the prior bad acts evidence:

13

… AD testified that defendant would, on numerous occasions and at her invitation, come into her room when she was scared so that he could rub her back. AD provided specificity as to where defendant was positioned and what he was wearing when he rubbed her back, and when he engaged in the different penetrations after rubbing her back. AD also testified to a "wet spot" that was left on the bed after one occasion and not knowing what it was from. She also testified about why she ended up disclosing the incidents three years after they occurred.

Though he denied any improper behavior, defendant did admit that he would go into AD's room at night when she was scared in order to rub her back. In other words, he provided corroboration to AD's testimony about defendant coming into the room at night and rubbing her back. Similarly, AD's mother, Sweet, provided emotional testimony about AD's disclosure, and that upon this disclosure, she immediately took AD to the hospital. AD's medical records, which were admitted into evidence, also contained statements that were consistent with what AD testified to at trial.

Weighing against this evidence is the improper testimony provided by Sweet, who answered defense counsel's question by saying that she had heard a third party claim that defendant molested another girl. On redirect, Sweet identified the third party as defendant's sister, who allegedly revealed to Sweet that defendant molested her when she was a minor. This testimony occurred on five pages of transcript (out of approximately 265 pages of transcripts covering two and a half days of trial), though there were only three questions and answers that provided the other acts evidence. Through follow-up questions by defense counsel, Sweet also admitted that she never made any complaints or reports with the police about the statement until the case against defendant was brought. The prosecutor did not use this information in closing argument, and it was not otherwise addressed again before the jury.

14

Upon review of the record, we again conclude that there was not a reasonable probability that, but for defense counsel's error, the outcome of the trial would have been different. As we have recounted, AD provided fairly detailed testimony about the incidents, and some of that testimony was corroborated by defendant (the touching during the back rub) and confirmed by Sweet. And though Sweet indeed provided testimony that defendant had molested his sister when she was a child, which the jury could have used as confirmation of defendant's proclivity to molest young girls, Sweet did not testify to any specific details of defendant's alleged abuse of his sister, and his sister did not testify. Thus, the jury was not presented with any evidence regarding (1) how old defendant or his sister was when the alleged incident occurred; (2) where the event occurred, and under what circumstances, (3) whether the alleged incident was ever reported, and if it was, what was the outcome, and (4) whether it was an isolated event, or something prolonged. In other words, all the jury heard during Sweet's brief testimony on the issue was that a non-witness told Sweet that defendant molested her as a child. Though it would have obviously been better had that testimony never come out, Sweet's testimony was short and vague, especially when compared to the more specific testimony from AD and the limited corroboration of some of that testimony. And, importantly, the testimony was never raised by either party for the remainder of the trial. We are not convinced that, but for Sweet's brief testimony, which was not referenced again during trial, there was a substantial likelihood that the outcome of the proceedings would have been different.

*Dufek III*, 2023 WL 115071, at *3 (internal citations and footnotes omitted).

15

The Michigan Court of Appeals further concluded that the cumulative effect of other errors from the trial did not change its view that Dufek had not been prejudiced:

> Nor does the cumulative effect of the other errors change our opinion. The other errors were (1) the admission of Sweet's testimony that AD told her that "My dad did that to me [ ]," (2) the prosecutor's closing argument about whether female genitalia needs to be ripped to prove abuse, which was successfully objected to, and (3) defense counsel's failure to add [Lynzey] Board [Dufek's then-fiancé] as a witness. None of these errors, when added to the other acts evidence, changes our view. As to Sweet's statement, that was merely cumulative to what AD had already testified to before the jury. With respect to the prosecutor's closing argument, it was objected to, and the jury was instructed that statements by counsel are not evidence. Regarding defense counsel's failure to add Board as a witness, the record shows that any testimony offered by Board regarding the love and relationship between AD and defendant would have been cumulative to the testimony provided by the defense's other witnesses. Mullins and defendant testified that defendant and AD had a loving relationship, and AD testified that she had a loving relationship with defendant. Therefore, whether considered individually or collectively, none of these errors deprived defendant of a fair trial.

*Dufek III*, 2023 WL 115071, at *4 (internal citations omitted).

As an initial matter, Dufek's counsel argues that the Michigan Court of Appeals in its final opinion on remand applied the wrong prejudice standard when it concluded that it was unable to see a "substantial likelihood" of a different result had counsel not opened the

16

door to the evidence, as opposed to using *Strickland's* "reasonable probability" standard. ECF No. 2, PageID.63–64.

Although the Michigan Court of Appeals concluded its prejudice finding by using the "substantial likelihood" language, several times within the opinion it recited the correct "reasonable probability" standard. *See Dufek III*, 2023 WL 115071, at *2–3. The court, citing *Strickland*, stated "to establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and that "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at *2 (citation modified). The court's failure to use the precise "reasonable probability" language when ultimately rejecting Dufek's ineffective assistance of counsel claim does not mean that the court failed to adjudicate his claim on the merits, for the purposes of invoking the AEDPA's deferential standard of review. *See Clinard v. Lee*, 722 F. App'x 552, 561–62 (6th Cir. 2018) (state postconviction appellate court applied correct standard for ineffective assistance of counsel claim when assessing whether counsel's deficient performance in waiving hearing on transfer from juvenile court prejudiced petitioner, and, thus, petitioner's claim was not subject to *de novo* review under the AEDPA, although state court omitted the words "reasonable probability" when assessing prejudice under the *Strickland* standard, where it correctly stated the applicable standard earlier in its

opinion, and it properly applied that standard when it concluded that there was no reasonable probability that petitioner would not have been transferred to adult court had all of evidence been presented to juvenile court); *see also Williams v. Roper*, 695 F.3d 825, 832 (8th Cir. 2012) (although the state court did not use the "reasonable probability" modifier, it recited the correct *Strickland* standard earlier in the decision); *Sussman v. Jenkins*, 636 F.3d 329, 359–60 (7th Cir. 2011) (omission of "reasonable probability" language was not contrary to *Strickland* because the state court cited to state cases incorporating *Strickland* and the discussion clearly indicated the court did not believe there was a reasonable probability the result would have been different).

The critical question for granting federal habeas relief on an ineffective assistance of counsel claim is not whether the federal habeas court on habeas review itself could see a reasonable probability of a different result had defense counsel taken a different approach. Instead, "[a]ll that matters was whether the *[state] court*, notwithstanding its substantial latitude to reasonably determine that a defendant has not shown prejudice, still managed to blunder [this issue] so badly that every fairminded jurist would disagree" with the state court's determination that the defendant had not been prejudiced by counsel's deficiency. *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam) (citation modified).

Upon review of the case, this Court on habeas review cannot say that the Michigan Court of Appeals' decision that Dufek was not

18

prejudiced by counsel's deficiency was unreasonable. It is not the case that every fairminded jurist would find that the Michigan Court of Appeals blundered badly in its determination. AD gave clear and specific testimony concerning the sexual assaults. Although Dufek denied molesting his daughter, he confirmed a portion of her testimony by admitting that he would go into her bedroom to give her backrubs, just as she said. AD's mother provided additional corroboration by testifying that AD only made these allegations after the two had a talk about sex and that she took AD to the hospital immediately for an examination. The external genitalia exam at the medical examination showed that AD had a perforated hymen, which could be consistent with sexual abuse, or could be a normal finding for a ten-year-old female. *Dufek I*, 2021 WL 2390200, at *6. Compared to this evidence, the testimony about the alleged prior sexual molestation of Dufek's sister was brief, vague, and was not repeated by the prosecutor in her closing argument.

The Michigan Court of Appeals reasonably concluded that Dufek was not prejudiced by his counsel's deficiency in opening the door to other acts evidence concerning the alleged prior sexual molestation by Dufek in light of the compelling evidence of his guilt coupled with the fact that the prosecutor did not mention this allegation in her closing argument to attack Dufek's credibility. *See James v. United States*, 217 F. App'x 431, 436–37 (6th Cir. 2007) (defense counsel's alleged ineffectiveness in failing to object to government's introduction of extraneous offense evidence of

defendant's nearly 30-year-old conviction for stealing 50 to 80 firearms was harmless error, in instant prosecution for being a felon in possession of a firearm, in light of solid inculpatory evidence, which included eyewitness and police testimony); *McCullough v. Stegall*, 17 F. App'x 292, 297 (6th Cir. 2001) (even if counsel's performance was deficient in eliciting testimony in prosecution for first-degree murder that petitioner had a prior breaking and entering conviction and a prior narcotics charge, petitioner was not prejudiced where evidence of guilt was overwhelming); *Salem v. Yukins*, 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006) (Friedman, J.) (even if defense counsel erred in asking petitioner whether she had ever been a drug addict, which opened the door to questions regarding her prior drug conviction, petitioner was not prejudiced by such error and, thus, was not denied effective assistance of counsel, in trial for delivery of heroin and conspiracy to deliver heroin, in light of the overwhelming evidence of her guilt); *Davis v Cargor*, No. 2:24-CV-12042, 2025 WL 1789538, at *5 (E.D. Mich. June 27, 2025) (Drain, J.) ("The Michigan Court of Appeals reasonably concluded that Petitioner was not prejudiced by his counsel's failure to object to the admission of his prior convictions and in eliciting testimony about them in light of the compelling evidence of Petitioner's guilt coupled with the fact that the prosecutor did not mention Petitioner's prior convictions in his closing argument to attack Petitioner's credibility.").

Accordingly, Dufek is not entitled to habeas relief on his first ineffective assistance of counsel claim.

**C. Failure to include Lynzey Board on defense's witness list**

Dufek next claims that defense counsel was ineffective for failing to include his fiancée, Lynzey Board, as a defense witness on the witness list, resulting in Board's inability to testify at trial. ECF No. 2, PageID.61–62. Dufek contends that Board would testify about AD's relationship with Dufek before the allegations came to light, the custody dispute between Dufek and Sweet over AD, and Sweet needing AD to babysit her younger daughter. *Id.* Dufek argues that Board's testimony was "critical to the defense theory: [Sweet]'s conflict with Mr. Dufek and her reliance on [AD] for babysitting motivated [Sweet] to coach [AD] to make allegations against Mr. Dufek," and would have made the jury more likely to believe his version of the events. *Id.*

Dufek's counsel attached an affidavit from Board to two motions for remand that she filed in the Michigan Court of Appeals, so that the case could be sent back to the trial court for an evidentiary hearing on the ineffective assistance of counsel claims. Counsel later attached Board's affidavit as an exhibit to her appeal brief. Dufek's motions to remand were denied by the Michigan Court of Appeals. Because the motions to remand were denied and no evidentiary hearing was held in the trial court, the Michigan Court of Appeals indicated that Dufek's claim of ineffective assistance of counsel was limited to review for errors apparent

21

on the record. *Dufek I,* 2021 WL 2390200, at \*16. The Michigan Court of Appeals, in rejecting Dufek's ineffective assistance claim involving Board, acknowledged that appellate counsel had attached a copy of Board's affidavit to her appellate brief, but they declined to consider the affidavit as evidence because it was not part of the lower court record. *Id.* at \*19; *Dufek II*, 2022 WL 981088, at \*4.

Dufek's counsel has argued that Board's affidavit was properly before the Michigan courts because it was attached to the two motions to remand. However, the motions to remand were denied and no evidentiary hearing was conducted on Dufek's claim. In the absence of an evidentiary hearing in the trial court, Board's affidavit was never presented to the lower courts and thus it was proper for the Michigan Court of Appeals to decline to consider the affidavit, even if it was attached to the motions to remand that were filed with the Michigan Court of Appeals. *See People v. Horn*, 755 N.W.2d 212, 219 (Mich. Ct. App. 2008) (declining to consider affidavits submitted with defendant's motion for remand because the affidavits were not considered by the trial court, and so the court's review of defendant's claim of ineffective assistance of counsel was limited to errors apparent on the record).

The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude

22

this Court from considering Board's affidavit because it was not properly before the Michigan courts. *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Even if the allegations contained in Board's affidavit are considered, the Michigan Court of Appeals properly concluded that Dufek was not prejudiced by the failure to call Board to testify because her testimony would have been cumulative of other evidence presented at trial. Dufek claims that Board would testify about AD's relationship with him before the sexual molestation allegations came to light, the custody dispute between Dufek and Sweet over AD, and Sweet needing AD to babysit her younger daughter. Dufek argues that a conflict with Sweet and her reliance on AD for babysitting motivated Sweet to coach her daughter to make these allegations against him. He contends that had Board testified, the jury would have been more likely to believe his version of events. Thus, he contends, Board's inability to testify prejudiced him.

The Michigan Court of Appeals rejected this claim both in its initial opinion and its subsequent opinions on remand, finding that Dufek was not prejudiced by the failure to call Board because any testimony offered by Board as to the love and relationship between AD and Dufek would have been cumulative to the testimony provided by the defense's other witnesses. Both Mullins and Dufek testified that Dufek and AD had a

23

loving relationship, and AD testified that she had a loving relationship with her father. ECF No. 7-9, PageID.1922; ECF No. 7-10, PageID.1967–68, 1973–74, 1990, 1993–2001, 2010–11, 2024; *Dufek III*, 2023 WL 115071, at *4; *Dufek II*, 2022 WL 981088, at *4; *Dufek I,* 2021 WL 2390200, at *19. In addition to this testimony, Sweet herself admitted to a custody dispute between herself and Dufek after Dufek filed an emergency motion for custody. ECF No. 7-9, PageID.875–76. Sweet also admitted that she used AD to babysit her younger daughter. *Id.* at PageID.1876–77. Sweet later acknowledged that she did not file a sexual molestation complaint against Dufek with the police until after the custody dispute. *Id.* at PageID.1882.

Dufek therefore was not prejudiced by defense counsel's failure to call Board to testify because her testimony was cumulative of other evidence in support of Dufek's claim that the victim had been coached by Sweet to falsely accuse him of sexual assault and that neither AD nor Sweet were credible. *Wong v. Belmontes,* 558 U.S. 15, 22–23 (2009) (exclusion of cumulative evidence does not establish prejudice); *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Allen v. Howes*, 599 F. Supp. 2d 857, 875 (E.D. Mich. 2009) (Lawson, J.) (petitioner not prejudiced by exclusion of cumulative evidence), *aff'd*, 438 F. App'x 432 (6th Cir. 2011); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.) ("The alleged ineffectiveness of counsel in failing to call Armstrong to testify was not prejudicial where his testimony

would have been merely cumulative to Cork's testimony and would have had less than a marginal effect required to establish reasonable doubt as to petitioner's guilt.").

The jury had significant evidence presented to it that the victim's credibility was questionable as well as a potential motive for her mother to get her to fabricate sexual assault charges against Dufek. Because the jury was "well acquainted" with evidence that would have supported Dufek's claim that AD fabricated these charges at the request of her mother, additional evidence in support of Dufek's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Dufek also argues that the prejudice he suffered from Board's inability to testify was "compounded by the prosecutor playing a jail phone call between [Board] and Mr. Dufek for the jury," wherein the prosecutor believed Dufek stated that 2015 (i.e., near the end of when AD lived with him) was "the lowest point in his life." ECF No. 2, PageID.61–62; ECF No. 7-10, PageID.2018–21. According to Dufek, because the transcript shows Board, not Dufek, made the statement, counsel's error precluded Board from "clear[ing] up any confusion about the phone call." ECF No. 2, PageID.62. Dufek overlooks the fact that the prosecutor withdrew the jail call as evidence. ECF No. 7-10, PageID.2018–21; s*ee Dufek I,* 2021 WL 2390200, at *4 ("Because the jail call was indecipherable and the prosecution withdrew the jail call, there was no plain error affecting defendant's substantial rights in the trial court's

25

refusal to allow Board to testify.") Because this evidence was withdrawn, there was no need for Board to refute it.

Accordingly, while Dufek's counsel was deficient for omitting Board from the witness list, the Michigan Court of Appeals reasonably concluded that Dufek failed to show prejudice from counsel's error. Dufek is not entitled to habeas relief on his second claim.

### D. Defense counsel's failure to object to vouching by the investigating officer

Dufek in his third ineffective assistance of counsel claim argues that defense counsel was ineffective for failing to object to Detective Munson offering improper expert opinion testimony on child sexual abuse and improperly vouching as to AD's credibility by testifying that AD's testimony was not unusual for a victim of child sexual abuse. ECF No. 2, PageID.54–63.

The factual basis for Dufek's claim was discussed by the Michigan Court of Appeals in their first opinion, in which they addressed Dufek's separate prosecutorial misconduct claim that the prosecutor elicited improper opinion testimony from Detective Munson:

> Defendant alleges that the prosecutor improperly elicited expert testimony from Detective John Munson when he was not qualified as an expert at trial, which 'boosted' AD's credibility. Munson testified that he had been with the Inkster Police Department for 21 years, that he was assigned as officer in charge of defendant's case, and as part of his investigation, he reviewed AD's interview with the forensic examiner, and met with Sweet and defendant. The prosecutor

26

asked how many sexual assault cases with child victims he had worked on, and Munson estimated over 100. Then the prosecutor asked:

> Q. Okay. And is there one way that—that child victims of sexual assault typically act?

> A. No. Every person is different, every child is different. Their response to trauma, and their ability to talk about it, varies widely.

> Q. And when you were watching [AD] testify, was her response unusual for a victim of sexual assault?

> A. No.

*Dufek I,* 2021 WL 2390200, at *7.

After discussing the applicable Michigan caselaw regarding the giving of opinion testimony concerning the credibility of a child sex assault victim, the Michigan Court of Appeals concluded that Munson's testimony was admissible opinion testimony under Michigan law:

> Here, Munson did not testify as extensively to his knowledge or background in cases of child sexual abuse as did the detective in *Dobek*; [2] however, assuming expert testimony was required about the typical way that victims of child sexual assault act, Munson was sufficiently qualified to give this testimony. *Id.* He had been with the Inkster Police Department for over 21 years, and had worked on over 100 child sexual assault cases. The testimony about AD's response was admissible, and the prosecutor acted in good faith in eliciting it, id., so defendant cannot establish a plain error affecting his substantial rights.

*Dufek I*, 2021 WL 2390200, at *8 (additional citation omitted).

---

[2] *People v. Dobek,* 732 N.W.2d 546, 554 (Mich. Ct. App. 2007).

27

In addressing Dufek's ineffective assistance of counsel claim later in its opinion, the Michigan Court of Appeals ruled that Dufek "failed to establish any instances of prosecutorial error that denied him a fair and impartial trial," referring specifically to "alleged instances of prosecutorial error concern[ing] improper 'bolstering' of AD's credibility," and so "any objection by defense counsel would have been futile." *Id.* at *18. On remand from the Michigan Supreme Court, the Court of Appeals again held that no prosecutorial misconduct occurred, and thus Dufek was not prejudiced by defense counsel's failure to object, *Dufek II*, 2022 WL 981088, at *4, and the court adopted that analysis in its opinion following the second remand. *Dufek III*, 2023 WL 115071, at *2 n.1.

Dufek argues that the Michigan Court of Appeals did not properly adjudicate his claim that trial counsel failed to object to the officer's vouching testimony on the merits and instead "glossed over" this claim. ECF No. 2, PageID.57. To the extent Dufek may be correct, this claim of error still fails. When a state court fails to adjudicate a habeas petitioner's claim on the merits, a federal court is required to review that claim *de novo. See McKenzie v. Smith,* 326 F.3d 721, 726 (6th Cir. 2003). Accordingly, this Court shall review this ineffective assistance of trial counsel claim *de novo.* However, even where a federal habeas court applies *de novo* review to a claim of ineffective assistance of counsel, the standard for judging a counsel's performance is still "a most deferential

one." *Hale v. Cool,* 122 F.4th 637, 648 (6th Cir. 2024) (quoting *Harrington*, 562 U.S. at 105).

Dufek is not entitled to relief on this claim for several reasons.

First, the Michigan Court of Appeals concluded that Detective Munson's testimony was admissible under Michigan law. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals determined that it was permissible under Michigan law for Munson to testify that AD's response was not unusual for a sexual assault victim. This Court must defer to that determination in resolving Dufek's ineffective assistance of counsel claim. *See Brooks v. Anderson,* 292 F. App'x 431, 437–38 (6th Cir. 2008). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this portion of Dufek's third ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Secondly, counsel may have chosen not to object to Detective Munson's testimony so as not to highlight it to the jury, to avoid bringing undue attention to the evidence. *See Cobb v. Perini,* 832 F.2d 342, 347–48 (6th Cir. 1987) (recognizing the "strong presumption that counsel's conduct falls within the wide range of reasonable professional

29

assistance"). "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint[.]" *United States v. Caver,* 470 F.3d 220, 244 (6th Cir. 2006). Dufek is unable to show that counsel's failure to object to this evidence—when such an objection could draw more attention to the opinion—was deficient, to support an ineffective assistance of counsel claim. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010).

Third, defense counsel on cross-examination did elicit an admission from Detective Munson that he was not able to determine whether a victim of sexual assault is lying or telling the truth based on either their typical or atypical behavior. ECF No. 7-9, PageId.1898–99. Where trial counsel has dealt with a problem by choosing one option over another," a reviewing court does "not second-guess that strategy." *Searcy v. Berghuis*, 549 F. App'x 357, 362 (6th Cir. 2013). Counsel's decision to cross-examine Detective Munson about his statement, rather than to object to its admissibility, is a reasonable one that defeats Dufek's ineffective assistance claim.

Finally, considering the additional evidence against Dufek, he is unable to show that he was prejudiced by defense counsel's failure to object to Detective Munson's testimony that AD's testimony was not unusual for a sex assault victim. *See Schoenberger v. Russell*, 290 F.3d 831, 836–37 (6th Cir. 2002) (habeas petitioner not denied the effective assistance of counsel where he could not show that he was prejudiced by

defense counsel's failure to object to social workers' and juvenile probation counselor's testimony concerning their opinions as to the truthfulness of minor victims in reporting sexual abuse by defendant). This is particularly so in light of the fact that Detective Munson only made a brief reference in a single answer to his impressions about AD's credibility. *See Gresser v. Franke*, 628 F. App'x 960, 963 (9th Cir. 2015).

### E. Defense counsel's failure to object to interrogation video

Dufek also claims that counsel was ineffective for failing to object to the interrogation video where Dufek admitted on the video, in response to Detective Munson's question, that AD had never lied to him about anything serious before. The Michigan Court of Appeals rejected this portion of Dufek's claim because there was no basis to exclude the videotaped interrogation. The Court stated that "defense counsel's decision to stipulate to the admission of the interrogation video is a matter of trial strategy that will not be substituted by this Court." *Dufek I*, 2021 WL 2390200, at *18. The court further noted that Dufek was advised of his *Miranda* rights during the interrogation, waived them, and voluntarily chose to speak to Munson. Accordingly, there was no basis to exclude the videotape, and any objection would have been futile. *Id.* .

Based on the foregoing analysis by the Michigan Court of Appeals, there was no reasonable probability that a motion to suppress based on an alleged *Miranda* violation would have succeeded in this case. Hence,

Dufek was not denied effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson,* 123 F. App'x 207, 210–12 (6th Cir. 2005). Moreover, because the Michigan Court of Appeals reasonably determined that Dufek's statement was voluntary, and he has not alleged otherwise here, it was also a reasonable application for that court to determine that trial counsel was not ineffective for failing to move for Dufek's statement to be suppressed. *See Lewis v. Curtain*, 632 F. App'x 788, 795 (6th Cir. 2015). Accordingly, Dufek is not entitled to relief on this claim of error.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** the Petition for a writ of habeas corpus.

The Court will also deny a certificate of appealability to Dufek. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or

32

wrong. *Id.* at 484. The Court **DENIES** Dufek a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.

However, although jurists of reason would not debate this Court's resolution of Dufek's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Dufek may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002) (Rosen, J.).

Accordingly, based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

Dated:  June 1, 2026　　　　　s/Terrence G. Berg_____
　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE